IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**,

  Plaintiff,

v.

**RAFAEL PINA-NIEVES**,

  Defendant.

**CRIMINAL CASE NO.**: 20-258 (FAB)

## MOTION FOR DISCOVERY
## OF GRAND JURY SELECTION PROCEDURES

Pursuant to 28 U.S.C. § 1867(f), Rafael Pina-Nieves ("Mr. Pina-Nieves") respectfully moves for discovery of this Court's jury selection plan and any related COVID-19 juror excuse policies. Mr. Pina-Nieves has an unqualified statutory right to documents reflecting and related to the procedures by which his grand jury was selected, and a future petit jury will be selected.

A grand jury returned the Indictment in this case on August 13, 2020, in the midst of the COVID-19 pandemic. *See* Indictment, Docket No. 1. The COVID-19 pandemic has affected distinctive groups differently. Prospective grand jurors may have deferred or been excused from jury service by, for example, indicating that they had an underlying medical condition that put them at a higher risk of developing serious health complications from COVID-19 or that they live with, or provide direct care for, someone with such a condition. Even if the grand jury was empaneled prior to the commencement of the pandemic, grand jurors may have been excused from service in light of COVID-related concerns. Additionally, trial in this matter may be held when the pandemic will be ongoing and prospective jurors who receive a summons for jury service may seek to defer their service or be excused in light of concerns about contracting COVID-19.

1

Accordingly, during the unprecedented COVID-19 pandemic, the process by which a grand jury or petit jury is ordinarily selected may not comply with the requirement that its members represent a fair cross-section of the community and any adjustments made to the ordinary jury selection process may not resolve, and may even exacerbate, these concerns. Accordingly, Mr. Pina-Nieves respectfully seeks to exercise his statutory right to discovery related to the jury selection plan during the COVID-19 pandemic to ensure compliance with his Fifth and Sixth Amendment rights.[1]

## I. DOCUMENTS REQUESTED

Mr. Pina-Nieves requests the following documents, to the extent they are maintained by the Court, be produced by the Clerk of the Court or, to the extent they are in the Government's possession, by the Government:[2]

(1) The Jury Plan for the District of Puerto Rico currently in effect, if different from that available on the Court's website (Amended Plan for the Random Selection of Grand and Petit Jurors Pursuant to the Jury Selection and Service Act of 1968, as amended, U.S. D. CT. D. P. R., February 9, 2006. https://www.prd.uscourts.gov/sites/default/files/documents/19/Amended_Jury_Plan.pdf ("D. P.R. Jury Selection Plan")), and a description of any changes that have been made in the selection of prospective jurors due to the COVID-19 pandemic, including instructions given to, and responses from, the Jury Department under the Court's Frequently Asked Questions about COVID-19 (Jury Trial FAQ about COVID- 19, U.S. D. CT. D. P.R. https://www.prd.uscourts.gov/ jury-service-frequently-asked-questions-faq-about-covid-19);

---

[1] The phrase "during the COVID-19 pandemic," as used in this motion, refers to the time period from March 13, 2020 to present, during which the COVID-19 pandemic has affected operating procedures in this District. On March 13, 2020, Chief Judge Gelpí continued all jury trials in this District (with the exception of current ongoing trials), effective March 16, 2020, through May 29, 2020. *See Order Concerning Jury Trials and other Proceedings Before the United States District Court for the District of Puerto Rico*, Misc. No. 20-088 (GAG), ECF No. 2 (D.P.R. Mar. 13, 2020). Continuance orders, and orders to conduct hearings via teleconferencing continue to the present, with jury trials resuming as of March 5, 2021 pursuant to a January 5, 2021 Order. *See Sixth Amended Order Continuing Civil and Criminal Proceedings until January 11, 2021*, Misc. No. 20-088 (GAG).

[2] Throughout these requests, "documents" includes electronic data and, to the extent that documents and/or data are kept in accessible electronic form, Mr. Pina-Nieves requests them in that form. Any documents containing personal identifying information can either be redacted to mask such information or the documents can be produced pursuant to a protective order.

(2)   Documents sufficient to show: (a) the Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation of all grand juries empaneled in the District during the COVID-19 pandemic; (b) the Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation of all grand jury members excused or deferred from participating in a grand jury after it was empaneled in the District; and (c) the Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation of any grand jury members added during the COVID-19 pandemic after a grand jury was originally empaneled in the District;

(3)   The Juror Qualification Form distributed to potential grand or petit jurors, as contemplated in Section 6 of the Court's Plan, and any additional forms being distributed to potential grand or petit jurors during the COVID-19 pandemic;

(4)   The District's two most recently submitted AO-12 forms;

(5)   Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for those individuals on the Master Jury Wheel in this District;

(6)   Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for those individuals eligible for jury service in this District;

(7)   Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for those individuals: (a) to whom summonses and jury questionnaires were sent, as contemplated by Sections 4, 6, 11, and 13 of the Court's Plan, and (b) those deemed qualified for jury service, as contemplated by Sections 4, 6, 11, and 13 of the Court's Plan;

(8)   Documents identifying for the District all excuses received from potential petit or grand jurors and, separately, all excuses accepted from potential petit or grand jurors, as contemplated by Sections 7 - 9 of the Court's Plan, related to the COVID-19 pandemic;

(9)   Documents reflecting any policies or practices established by the Court or Clerk's Office for excusing grand or petit jurors during the COVID-19 pandemic;

(10)  Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for all prospective jurors for the District who have been excused from or granted a deferral of their petit or grand jury service for a reason related to the COVID-19 pandemic; and

(11)  Once criminal trials in this District resume, any additional documents or data responsive to Request Nos. 2–3 and 5–10 for the period between March 13, 2020

and 30 days prior to the scheduled commence of *voir dire* in this matter.

## II.     ARGUMENT

The Fifth and Sixth Amendments to the United States Constitution guarantee a criminal defendant the right to an impartial grand and petit jury.  The Supreme Court has held that "the presence of a fair cross section of the community on venires, panels, or lists from which petit juries are drawn is essential to the fulfillment of the Sixth Amendment's guarantee of an impartial jury trial in criminal prosecutions." *Taylor v. Louisiana*, 419 U.S. 522, 526, 530–31 (1975).  Further, the Court has explained that "[t]he Fifth Amendment requires the Federal Government to use a grand jury to initiate a prosecution" and, because the grand jury "controls not only the initial decision to indict, but also significant decisions such as how many counts to charge and whether to charge a greater or lesser offense, . . . [t]he integrity of these decisions depends on the integrity of the process used to select the grand jurors." *Campbell v. Louisiana*, 523 U.S. 392, 398–99 (1998); *see Peters v. Kiff*, 407 U.S. 493, 501, 504 (1972) (plurality op.) ("[W]hatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law."); *see also United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979) ("In federal criminal proceedings, the right to indictment by an unbiased grand jury is guaranteed by the fifth amendment.").

To protect these rights, Congress passed the Jury Selection and Service Act of 1968 ("JSSA"), which made it "the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. For the reasons set forth below, Mr. Pina-Nieves has a statutory right under the JSSA to discovery of materials relating to jury selection.  The documents listed above are necessary for him to

evaluate whether the unprecedented COVID-19 pandemic and the jury selection process and policies in place during the pandemic result in the impermissible exclusion of distinctive groups. *See* 28 U.S.C. § 1867(f).

**1.      Mr. Pina-Nieves has an unqualified statutory right to discovery of the jury selection materials requested above.**

The JSSA provides that a defendant "may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions" of the statute in selecting the grand jury or petit jury. 28 U.S.C. § 1867(a). A violation is "substantial" if it frustrates any of three principles on which the JSSA is based: "(1) the random selection of jurors, (2) culling of the jury from a fair cross-section of the community, and (3) the determination of disqualifications, exemptions, and exclusions based on objective criteria." *United States v. Kamahele*, 748 F.3d 984, 1022 (10th Cir. 2014). "The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation" of such a motion. 28 U.S.C. § 1867(f).

Section 1867(f) creates an "*unqualified right* to inspect jury lists." *Test v. United States*, 420 U.S. 28, 30 (1975) (per curiam) (emphasis added). "Because the right of access to jury selection records is 'unqualified,' a district court may not premise the grant or denial of a motion to inspect upon a showing of probable success on the merits of a challenge to the jury selection provisions." *United States v. Royal*, 100 F.3d 1019, 1025 (1st Cir. 1996); *accord United States v. Williamson*, 903 F.3d 124, 133 (D.C. Cir. 2018) (district court erred in denying defendant access to jury commission records); *United States v. Curry*, 993 F.2d 43, 44 (4th Cir. 1993) (district court erred in denying defendant access to master list of jurors from which grand jury indicting him was selected; remanding to allow review of jury list and opportunity to move for new trial); *United*

5

*States v. Lawson*, 670 F.2d 923, 926 (10th Cir. 1982) (district court erred by denying motion to inspect and copy jury selection materials pursuant to § 1867(f); remanding for opportunity to inspect records and file motion, with instruction that defendant's conviction be set aside if defendant established that method of jury selection violated the law); *Government of Canal Zone v. Davis*, 592 F.2d 887, 888–89 (5th Cir. 1979) (district court erred in denying defendant access to jury selection records; reversing convictions and remanding for appellants to determine whether jury selection process warrants challenge and whether to exercise their right to a jury trial); *United States v. Alejo-Luzon*, CRIMINAL 97-0290CCC, 1999 U.S. Dist. LEXIS 11295, at *2 (D.P.R. Feb. 17, 1999)("an unqualified right to inspection is required, not only by the plain text of the statute, but also by the statute's overall purpose of ensuring grand and petit jurors selected at random from a fair cross section of the community.") (citing *Test v. United States*, 420 U.S. at 30)).

Mr. Pina-Nieves seeks to exercise his statutory right to discovery.  He makes his discovery requests for the purpose of considering and preparing a motion for relief in light of the COVID-19 pandemic.  Further, each of his requests falls squarely within the ambit of § 1867(f), because they pertain to "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process." 28 U.S.C. § 1867(f).

Similar requests have recently been granted by a number of courts.  For example, in *United States v. Merrick*, No. 20-cr-009-JD, 2020 WL 4808634 (D.N.H. Aug. 18, 2020), the court granted the defendant's request for discovery of grand juror selection procedures and any related COVID-19 excuse policies under § 1867(f) in order to evaluate whether to file a motion to dismiss premised on the impermissible exclusion of African Americans and other minorities from the grand jury. *See also United States v. Eldarir*, No. 20-CR-243 (LDH), 2020 U.S. Dist. LEXIS 208405

(E.D.N.Y. Nov. 6, 2020) (granting the large majority of defendant's § 1867 grand jury discovery requests for indictment returned during the COVID-19); *United States v. Knight*, No. 3:19-cr-00038-MMD-CLB, 2020 U.S. Dist. LEXIS 194138 (D. Nev. Oct. 20, 2020) (in case where indictment was returned during COVID-19 pandemic, granting § 1867(f) motion for access to grand jury selection materials in order to determine whether to seek relief); *United States v. Sullivan*, No. 20-cr-337-WHO-1, 2020 WL 5944433 (N.D. Cal. Oct. 7, 2020) (same).

**2.  The requested materials are necessary for Mr. Pina-Nieves to evaluate whether to seek relief based on his Fifth and Sixth Amendment rights to an impartial grand and petit jury.**

As noted above, Mr. Pina-Nieves need not make any showing to entitle him to discovery of jury selection materials pursuant to 28 U.S.C. § 1867(f). Nonetheless, Mr. Pina-Nieves demonstrates below that he is seeking only materials "*as may be necessary* in the preparation or presentation of a motion under [§ 1867(a)]." 28 U.S.C. § 1867(f) (emphasis added).

    A.  <u>The document requests seek information necessary to determine whether distinctive groups of jurors are being systematically excluded from jury selection in a statistically significant way.</u>

Mr. Pina-Nieves request documents that will provide him with the information necessary to consider each element of the test for evaluating whether a jury selection procedure provides for a fair cross section of jurors from the community. To demonstrate that his constitutional rights are violated by any particular jury selection procedure, Mr. Pina-Nieves would need to show:

>   (1) that the group alleged to be excluded is a 'distinctive' group in the community;
>
>   (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
>   (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979); *accord Berghuis v. Smith*, 559 U.S. 314, 327 (2010).

African Americans and Hispanics are "distinctive" groups of jurors. *See Holland v. Illinois*, 493 U.S. 474, 478–80 (1990) ("It has long been established that racial groups cannot be excluded from the venire from which a jury is selected."); *Garcia-Dorantes v. Warren*, 801 F.3d 584, 600 (6th Cir. 2015) (African Americans and Hispanics are "distinctive" groups); *United States v. Carmichael*, 560 F.3d 1270, 1280 (11th Cir. 2009) (African Americans are a "distinctive" group); *United States v. Weaver*, 267 F.3d 231, 240 (3d Cir. 2001) (African Americans and Hispanics are "distinctive" groups); *United States v. Lara*, 181 F.3d 183, 192 n.1 (1st Cir. 1999) (Hispanics are a "distinctive group"; collecting cases from Second and Ninth Circuits holding the same); *United States v. Shinault*, 147 F.3d 1266, 1271–72 (10th Cir. 1998) (Government conceded that "Asians, Blacks, and Hispanics are all distinctive groups"); *United States v. Gault*, 141 F.3d 1399, 1402 (10th Cir. 1998) (Government conceded that "Hispanics, Native Americans and African Americans are distinct groups"). Likewise, the disparate exclusion of those who fall within a broad age group may result in the exclusion of a distinctive group. *See United States v. DiTommaso*, 405 F.2d 385, 391 (4th Cir. 1968) ("A community cross-section, however, will invariably contain a broad representation of individuals of various ages.").[3]

In order to determine whether representation of any distinctive group is not "fair and

---

[3] Although the Supreme Court has held that "the young" (defined as those under age 25) do not constitute a cognizable group (*Hamling v. United States*, 418 U.S. 87, 137 (1974) (pre-*Duren*); *see also United States v. Green*, 435 F.3d 1265, 1271 (10th Cir. 2006) (noting that other courts have held that "younger people" and "persons over 70" are not distinctive groups)), this authority involves the exclusion only of relatively narrow age groups, *i.e.*, the very youngest or the very oldest potential jurors. The exclusion of a broad band of ages, on the other hand, likely would deprive a defendant of a cross-section of the community. The Centers for Disease Control and Prevention reports that the hospitalization rate from COVID-19 for those 40 to 49 is three times greater, and the death rate ten times greater, than for those 18 to 29. Theses disparities grow dramatically with each older age band. If, for example, jurors 40 or older are not serving disproportionately from those younger than 40, plainly the resulting petit or grand jury would not reflect a cross-section of the community with respect to age. *See COVID-19 Hospitalization and Death by Age*, CTRS. FOR DISEASE CONTROL & PREVENTION, available at https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (updated August 18, 2020).

reasonable" under the second prong of the *Duren* test, Mr. Pina-Nieves needs data with which he can compare those in the community to those in the jury pools in this District. *See Duren*, 439 U.S. at 364–66 (data from which statistical comparisons can be drawn is necessary to make out the second and third prongs). In the First Circuit, the second prong of *Duren* is evaluated in relation to the absolute and comparative disparities of a distinct group's representation in the community as compared to the jury pool or venire. Census data and the responses to the juror qualification questionnaires can be used to compute these statistics. *See United States v. Pion*, 25 F.3d 18, 22 (1st Cir. 1994); *United States v. Hafen*, 726 F.2d 21, 23 (1st Cir. 1984); *United States v. Levasseur*, 704 F. Supp. 1158, 1162 (D. Mass. 1989). The documents Mr. Pina-Nieves requests seek the demographic data required to make these comparisons (Request Nos. 2, 4–7, 11). *See, e.g.*, *Duren*, 439 U.S. at 364–66 (where women make up 50% of the population, but jury venires contained only 15% women, those venires were not "reasonably representative" of community); *Shinault*, 147 F.3d at 1272 (when evaluating whether District of Kansas' jury selection procedures unconstitutionally excluded Asians, Blacks, and Hispanics from jury service, appropriate to compare "minorities' percentages on the qualified wheel to their percentage in the entire community").

The third prong of the *Duren* test ("systematic exclusion") requires a showing of exclusion over time, *i.e.*, that the exclusion is "inherent in the particular jury-selection process utilized." 439 U.S. at 366. The documents requested seek information during the COVID-19 pandemic relating to the procedure by which jurors are considered for service (Request Nos. 1, 3, 9); excuses given by jurors and accepted by the Court for excusing or deferring jury service (Request No. 8); and data reflecting those excused from service or whose service was deferred (Request Nos. 10–11). This information will reflect the Court's jury selection practices during the COVID-19 pandemic

and allow Mr. Pina-Nieves to determine whether the Court's procedures are systematically causing distinctive groups to be excluded over this extended period (from March 2020 through August 2020 in the case of the grand jury and through voir dire in the case of the petit jury) in a manner that violates his Sixth Amendment rights. *See Sullivan*, 2020 WL 5944433, at *4 (granting § 1867(f) motion and agreeing that "the grounds for excusal and the disposition of juror qualifications [during the COVID-19 pandemic] are directly relevant to whether the grand jury was selected at random"); *see also, e.g., Duren*, 439 U.S. at 366 ("systematic exclusion" shown where "large discrepancy occurred not just occasionally but in every weekly venire for a period of nearly a year").

> B. <u>There is reason to believe distinctive groups may be disproportionately being excluded from jury service in the District of Puerto Rico during the pandemic.</u>
>
> > i. *African-American and Hispanic individuals may be disproportionately being excluded from the jury selection process during the pandemic.*

After many months of enduring and studying the coronavirus, it is now well known that COVID-19 does not affect all individuals equally. Medical professionals have confirmed that people of color are at "increased risk of getting sick and dying from COVID-19." *Health Equity Considerations and Racial & Ethnic Minority Groups*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 24, 2020), https://tinyurl.com/ybwns8j7; *see also* Wei Li *Racial Disparities in COVID-19*, Harvard University, Blog, Scient Policy, Special Edition: Science Policy and Social Justice (Oct. 24, 2020)("Within the US, the pandemic is impacting racial groups differently, disproportionately affecting Black, Indigenous, and People of Color (BIPOC) communities.") (available at http://sitn.hms.harvard.edu/flash/2020/racial-disparities-in-covid-19/); Daniel Wood, *As Pandemic Deaths Add Up, Racial Disparities Persist — And In Some Cases Worsen*, NPR (Sept. 23, 2020) "(Data gathered early in the pandemic showed that communities of color are

disproportionately affected by COVID-19 across the United States. But incomplete data left a muddy picture of these disparities. Today, as the U.S. has surpassed 200,000 COVID-19 deaths, and reached nearly 7 million confirmed cases, racial data is more complete, and the trend is crystal clear: People of color get sick and die of COVID-19 at rates higher than whites and higher than their share of the population.") (available at https://www.npr.org/sections/health-shots/2020/09/23/914427907/as-pandemic-deaths-add-up-racial-disparities-persist-and-in-some-cases-worsen); William F. Marshall, III M.D. *Coronavirus infection by race: What's behind the health disparities?* (Aug. 13, 2020)("Research increasingly shows that racial and ethnic minorities are disproportionately affected by coronavirus disease 2019 (COVID-19) in the United States.") (available at https://www.mayoclinic.org/diseases-conditions/coronavirus/expert-answers/coronavirus-infection-by-race/faq-20488802). Recent data from the Centers for Disease Control and Prevention shows that "Black or African American, Non-Hispanic persons" are 3.7 times more likely to be hospitalized as a result of COVID-19 than "White, Non-Hispanic persons" and that "Hispanic or Latino persons" are 4.1 times more likely to be hospitalized as a result of COVID-19 than "White, Non-Hispanic persons." *See* https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html (updated November 30, 2020).

A number of courts have acknowledged the disparate effect coronavirus has had on racial and other minorities. In the course of granting compassionate release under 18 U.S.C. § 3582(c)(1)(A), courts have cited race as a reason an individual may be more susceptible to suffering extreme illness or dying from COVID-19. *See, e.g.*, *United States v. Wheeler*, No. 2:11-cr-36 (MSD), ECF No. 409 at p.9, n. 9) (E.D.Va. June 24, 2020) ("This Court does not intend to downplay the seriousness of the COVID-19 pandemic, its impact on all aspects of life (inside and

outside of prison), or its documented disproportionate impact on the African-American community.") *United States v. Mason*, No. 17-cr-195 (TSC), 2020 WL 4199553, at *1–2 (D.D.C. July 10, 2020) ("The COVID-19 fatality rate increases with age, is higher for men than women, and is among the highest for African Americans."); Order at 10; *United States v. Kellogg*, No. 1:12-cr-383-CAP-JCF-1 (N.D. Ga. July 8, 2020), ECF No. 405 (noting that African Americans "are five times as likely to be hospitalized or die from COVID- 19 than a non-Hispanic white person").

Recent studies confirm that African American and Hispanic prospective jurors are less likely to appear in the jury pool during the COVID-19 pandemic:

> A June [2020] survey of 1,000 registered voters conducted by the National Center for State Courts [("NCSC")] found that 64% of Latino respondents and 58% of Black respondents said they'd report for jury duty, compared to 69% of whites. . . . The NCSC poll found those least likely to report for jury duty during the pandemic were Black and Latina women across the age spectrum, as well as older white women. The demographic pools most likely to show up were younger white men, conservative white men, and white men without a college degree.

Carla Bayles, *Can You Get A Fair Jury Trial During The Pandemic?*, LAW360 (Aug. 30, 2020), https://tinyurl.com/y5u9lygu. Experts tether these distinctive groups' decreased representation in jury pools specifically to the disproportionate effect that coronavirus is having on them. *See id.*

      ii.      *Certain age groups may be disproportionately being excluded from the jury selection process during the pandemic.*

Although an individual of any age can contract COVID-19, the disease has proven substantially more harmful and often lethal for older adults. As noted above (*supra* n. 3), recent data reflects that those between the ages of 40 and 49 are three times as likely to be hospitalized from COVID-19 and ten times as likely to die as those aged 18 to 29. Those between the ages of 50 and 64 are four times as likely to be hospitalized from COVID- 19 and thirty times as likely to

die as those aged 18 to 29.  *See COVID-19 Hospitalization and Death by Age*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last updated Aug. 18, 2020). The documents requested will allow Mr. Pina-Nieves to determine whether individuals in a distinctive age group are disproportionately being excluded from the jury pool during the pandemic because they are being disproportionately excused from jury service or having their jury service deferred.[4]

### III.     CONCLUSION

Mr. Pina-Nieves seeks to exercise his unqualified statutory right discovery of the District of Puerto Rico's jury selection procedures pursuant to 28 U.S.C. § 1867(f).  He has reason to be concerned that the jury selection procedures and policies in place during the unprecedented COVID-19 pandemic may result in the underrepresentation of racial minorities and older individuals in a manner that deprives him of his constitutional rights.  He seeks data to which he is statutorily entitled.  Each of his requests for documents falls within the letter of the statute and is necessary for him to assess whether the jury selection procedures in place in this District during the COVID-19 pandemic comport with his Fifth and Sixth Amendment rights to an impartial grand and petit jury drawn from a fair cross section of the community and, if necessary, to allow him to prepare a motion for appropriate relief.

**WHEREFORE**, Rafael Pina-Nieves respectfully requests that the Court GRANT this motion and order the production of the documents requested herein.

---

[4] This concern is heightened by the fact that the jury selection plan in the District of Puerto Rico even prior to the pandemic allowed those over 70 to opt out of jury service.  *See* D.P.R. Jury Plan, Section 9(A)(1).  Thus, if, for example, those in their 40's, 50's, and 60's are disproportionately opting out during the pandemic, while people over 70 are opting out based on age, then the jury pool will be dramatically skewed such that it does not include a fair cross-section of the community with respect to age.

Respectfully submitted on this 25th day of February 2021, in San Juan, Puerto Rico.

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will provide access to all parties of record.

> **DMRA Law LLC**
> **Counsel for Defendant Rafael Pina-Nieves**
> Centro Internacional de Mercadeo
> Torre 1, Suite 402
> Guaynabo, PR 00968
> Tel. 787-331-9970
>
> *s/ Maria A. Dominguez*
> Maria A. Dominguez
> USDC-PR No. 210908
> maria.dominguez@dmralaw.com
>
> *s/ Javier Micheo Marcial*
> Javier Micheo Marcial
> USDC-PR No. 305310
> javier.micheo@dmralaw.com
>
> *s/ Manuel Franco*
> Manuel Franco
> USDC-PR No. 302406
> manuel.franco@dmralaw.com