IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff**, v. RAFAEL PINA-NIEVES, **Defendant**. | Criminal No. 20-258 (FAB) |

MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is defendant Rafael Pina-Nieves ("Pina")'s amended motion to travel. (Docket No. 76)  For the reasons set forth below, Pina's motion is **DENIED.**

I. Background

On August 13, 2020, a grand jury returned an indictment charging Pina with possession of a firearm by a convicted felon, and possession of a machinegun, in violation of 18 U.S.C. sections 922(g)(1) and 922(o), respectively.  (Criminal No. 20-258, Docket No. 1)[1]  Magistrate Judge Camille Vélez-Rivé granted Pina's motion for pre-trial release, setting bond at $1,000,000.  (Docket No. 8) The order setting conditions of release requires Pina to surrender

---

[1] Pina pled guilty to one count of bank fraud on May 13, 2015.  (Case No. 12-215, Docket No. 416)  The Court sentenced Pina to time he had already served, and two years of supervised release.  Id., Docket No. 496.

Criminal No. 20-258 (FAB)                                                2

his passport and prohibits international travel without prior authorization by the Court.  Id.  Pina may travel between Miami, Florida and Puerto Rico, but must notify the United States Probation Office ("USPO") beforehand.  Id.

Pina subsequently moved to amend his conditions of release, requesting permission to "use [his] boat within the territorial waters of Puerto Rico and Florida."  (Docket No. 25)  The Court granted his motion, stipulating that Pina:  "not venture further than three miles off the coast of Puerto Rico, place a tracking device on each boat and watercraft, and inform the USPO before "[using] any of his boats or watercraft."  (Docket No. 27)

On April 13, 2010, Pina filed an amended motion to travel.  (Docket No. 76)  Pina, a convicted felon accused of possessing a trove of ammunition, two pistols, one altered to shot as a machinegun, seeks to relocate to the Dominican Republic for 41 days to be with his fiancée for the birth of his fourth child.  Id.  The amended motion to travel is **DENIED**.

**II.  The Bail Reform Act**

Congress enacted the Bail Reform Act in 1984, 18 U.S.C. sections 3141 *et seq.*, in response to "the alarming problem of crimes committed by persons on release." United States v. Salerno, 481 U.S. 739, 742 (1987) (citation omitted).  Pursuant to this statute, the judicial officer "before whom an arrested person is

brought shall order that such person be released or detained, pending judicial proceedings." 18 U.S.C. § 3141(a). Section 3141 enumerates permissible conditions of release, including "specified restrictions on personal associates, place of abode, or travel." Id. § 3142(c)(1)(B)(iv). Conditions of release serve to "assure the appearance of the person" in Court and to protect "the safety of any other person and the community." Id. § 3142(c). Courts consider the following factors to determine the appropriate conditions of release:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence [. . .] or involves a minor victim or a controlled substance, <u>firearm</u>, explosive or other destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person; [and]
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Id. § 3142(g) (emphasis supplied). Moreover, the "Court may consider uncharged conduct in assessing the degree of danger posed by the defendant." <u>United States v. Rivera-Sepúlveda</u>, Criminal No. 19-695, 2020 U.S. Dist. LEXIS 14692 *5 (D.P.R. 2020) (Arias, J.) (citing <u>United States v. Rodríguez</u>, 950 F.2d 85, 88-89 (2d. Cir. 1991)). Conditions of release are subject to an "independent" standard of review, "giving deference to the determination of the

district court."  United States v. Patriarca, 948 F.2d 789, 791 (1st Cir. 1991).

### III. International Travel Poses an Unacceptable Risk of Nonappearance

The conditions of Pina's release are narrowly tailored to the specific circumstances of his case.  (Docket No. 8)  They are the least restrictive means to accomplish the dual objectives of section 3142:  to protect other persons and the community, and to ensure Pina's attendance at judicial proceedings.  18 U.S.C. § 3142.  Pina is subject to minimal restrictions pending the disposition of this action.  He is free to reside in Miami or Puerto Rico, and to sail within three miles of the Miami and Puerto Rico coasts, to travel between these locations without obtaining leave from the Court, and to reside at a private residence.  (Docket Nos. 8 and 27)

He seeks to modify the conditions of release further by venturing beyond the territorial jurisdiction of the United States from April 23, 2021 to June 3, 2021.  (Docket No. 76)  Pina wants his fiancée to give birth in "Santiago de los Caballeros, Dominican Republic" in honor of Pina's late father.  Id.  Pina's father died on May 28.  Id.  The child's due date coincides with the "twenty-first commemoration of his father's passing."  Id.  A child's birth hardly occurs on the date the obstetrician-gynecologist has

calculated, unless Pina somehow convinces the medical professionals and his fiancée that she give birth by caesarean section on the date <u>he</u> wants her to give birth.  Additionally, no reason is given to explain why Pina's fiancée would not want to remain under the care of her current OB/GYN, and change doctors a month before she is expected to give birth in the Dominican Republic.  The birth of Pina's child is not contingent on his presence.  In any event, he may participate virtually from Puerto Rico or Miami when the child is born.  Ultimately, the birth plan of Pina and his fiancée has no bearing on the Court's analysis.

A consideration of the section 3142(g) factors compels the Court to deny the amended motion to travel.  First, the nature of the offenses charged in the indictment are serious.  Pina allegedly possessed: (1) a 9mm caliber Glock pistol, (2) a .40 caliber Smith & Wesson pistol, and (3) 526 rounds of live ammunition, 56 of which are for assault weapons.  (Docket No. 1)  The Glock pistol functioned as a machinegun, "modified to shoot more than one shot, without manual reloading."  <u>Id.</u> at p. 2.

According to Pina, "the sentencing exposure in this case is not severe."  (Docket No. 76 at pp. 3-4)  Defense counsel estimates that Pina is subject to a range of 33 to 41 months of imprisonment pursuant to the United States Sentencing Guidelines ("U.S.S.G.").  <u>Id.</u>  Three and a half years in federal custody is not a trivial

Criminal No. 20-258 (FAB)                                                         6

matter.  The Court is unaware, and Pina's counsel does not indicate, if Pina himself thinks that spending 41 months in federal prison is "not severe."  (Docket No. 76 at p. 4)  Just one day in any prison is not something a reasonable person would desire.  The sentencing guidelines are advisory:  thus, the Court possesses ample discretion to impose a sentence below or above the guideline range should Pina be convicted.  United States v. Booker, 543 U.S. 220, 245 (2005); see United States v. Pantojas-Cruz, 800 F.3d 54 (1st Cir. 2015) (affirming the imposition of sentence in a weapons case "two times the top of [the defendant's GSR" for violating U.S.C. section 922(g)); United States v. Vázquez-Martínez, 812 F.3d 18 (1st Cir. 2016) (noting that the "district court could conclude that an above-Guidelines sentence [for violating 18 U.S.C. § 922(o), possession of a machinegun] was necessary to promote respect for the law"); United States v. Santini-Santiago, 846 F.3d 487 (1st Cir. 2017) (affirming an "above-guidelines sentence" for a defendant who pled guilty "to being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)"); United States v. Severino-Pacheco, 911 F.3d 14, 19 (1st Cir. 2018) (affirming "a sentence above the guideline range" because it "reflects the seriousness of the offense" (i.e. 18 U.S.C. § 922(o)); United States v. Rivera-Berríos, 902 F.3d 20, 23 (1st Cir. 2018) (affirming an "upwardly variant sentence" for a

Criminal No. 20-258 (FAB)                                                    7

"illegal possession of a machine gun"); United States v. Contreras-Delgado, 913 F.3d 232 (1st Cir. 2019) (affirming the sentence above the guideline range for "possessing a machine gun in violation of 18 U.S.C. § 922(o)"); United States v. Tirado-Nieves, 982 F.3d 1, 3 (1st Cir. 2020) (affirming a sentence "outside the advisory Guidelines" for "unlawful possession of a firearm by a felon and illegal possession of a machinegun").

Second, the weight of the evidence is ostensibly strong. Federal law enforcement agents gathered a plethora of evidence against Pina during an extensive investigation, including interviews with a confidential human source, and interceptions of incriminating telephone conversations between Pina and other individuals. (Docket No. 52, Ex. 2)[2] During a recorded conversation, Pina allegedly "remarked about the presence of some firearms inside a safe in a property that was in his name." (Docket No. 52 at p. 27) Magistrate Judge Marshal D. Morgan issued a search and seizure warrant on March 31, 2020, authorizing agents to recover evidence of a crime from Pina's residence in Caguas, Puerto Rico. (Docket No. 52, Ex. 2) The record does not disclose

---

[2] The admissibility of this evidence remains subject to the motion to suppress and any additional motions *in limine*. Pina argues that the telephone interceptions were obtained illegally. (Docket No. 82. at p. 3) But, the United States has yet to respond to Pina's motion to suppress. Only after the issue is joined will the Court resolve Pina's motion. The Court's assessment of the evidence pertains only to the propriety of permitting Pina to travel outside the United States.

Criminal No. 20-258 (FAB)                                                          8

the date of execution; the indictment alleges, however, that Pina possessed the ammunition and firearms "on or about April 1, 2020." (Docket No. 1)  Inculpatory evidence increases the likelihood of conviction, which in turn presents an incentive to flee.  See United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (holding that where "the evidence against defendant[] is strong, the incentive for relocation is increased.").

Third, the Court considered Pina's personal characteristics in setting forth the initial conditions of release.  The minimal restraints imposed on Pina were based, in part, on his financial and personal ties to Puerto Rico.  He was previously convicted, however, of committing bank fraud.  (Criminal No. 12-215, Docket No. 414)  Pina submitted false information to Doral Bank with the specific "intent to deceive."  Id.; see United States v. Donnat, 311 F.3d 99, 103 (1st Cir. 2002) (setting forth the elements of bank fraud) (citation and quotation omitted).  Although Pina is entitled to a presumption of innocence, the Court need not blind itself to Pina's history of deceitful conduct when considering the merits of his amended motion to travel.

Pina suggests that Instagram and a personal GPS device are sufficient conditions of release.  Documenting "everyday life on [Instagram]" is not, however, a verifiable means for confirming Pina's location.  (Docket No. 76 at p. 3)  Pina will "carry his

Criminal No. 20-258 (FAB)                                                      9

GPS tracker at all times." Id. at p. 4.  Unlike a conventional ankle bracelet, the SPOT tracker is portable and can be "mounted beneath fiberglass, fabric, or glass."  See SPOT-Trace-User-Guide.pdf (findmespot.com) (last visited April 21, 2021). Accordingly, the signal transmitted by this device need not correspond to Pina's actual physical location.  Additionally, the GPS device is under Pina's control, not under the control of the USPO, and Pina may place it where he is not actually located, or even disable it.  Moreover, travel to the Dominican Republic requires the USPO to return Pina's passport, permitting him to move freely among foreign jurisdictions, not just the Dominican Republic.  Given Pina's access to watercraft and monetary resources, the Court is not persuaded that there are conditions that could assure the safety of the community and the appearance of the defendant should Pina be permitted to travel beyond the territorial limits of the United States.  Consequently, the Court **DENIES** Pina's amended motion to travel.  He shall remain in the United States under the same conditions of release imposed by the magistrate judge and this Court pending the disposition of this criminal action.  (Docket Nos. 8 and 27)

### IV. Conclusion

For the reasons set forth above, Pina's amended motion to travel is **DENIED**.  (Docket No. 76)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 22, 2021.

> s/ Francisco A. Besosa
> FRANCISCO A. BESOSA
> UNITED STATES DISTRICT JUDGE