IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>RAFAEL PINA-NIEVES,<br><br>**Defendant.** | **Criminal No.** 20-258 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Rafael Pina-Nieves ("Pina")'s motion to dismiss the indictment pursuant to the Sixth Amendment of the United States Constitution. (Docket No. 168.) Pina also moves to suppress evidence obtained by the United States pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. sections 2510 *et seq.* ("Title III"). Id. The United States moves to admit statements made by defense counsel Francisco Rebollo-Casalduc ("Rebollo") pursuant to Federal Rule of Evidence 801 ("Rule 801"). (Docket No. 172 at p. 13.) For the reasons set forth below, Pina's motions to dismiss and suppress

are **DENIED**. The United States' motion to admit Rebollo's statements is **GRANTED**.[1]

## I. Background

Law enforcement officers executed a search warrant at Pina's residence in Caguas, Puerto Rico on April 1, 2020, seizing one 9mm Glock pistol, one .40 caliber Smith & Wesson pistol, and 526 rounds of ammunition. Id. at p. 4. A grand jury returned an indictment charging Pina with possession of a firearm by a convicted felon (count one), and possession of a machinegun (count two), in violation of 18 U.S.C. sections 922(g)(1) and 922(o), respectively. (Docket No. 1.)[2] Trial is set to commence on December 13, 2021. (Docket No. 132.)

Pina moved to dismiss the indictment on the eve of trial, asserting that the United States violated the Sixth Amendment of the United States Constitution by "[placing] an informant in [his] defense camp." (Docket No. 168 at p. 2.) The motion to suppress is premised on the United States' purported failure to minimize intercepted conversations between Pina and defense counsel. Id.

---

[1] The United States also requests that the Court order Pina to disclose to the Court if he intends to call as a witness any person that may or will incriminate themselves with the commission of a federal offense. (Docket No. 172 at p. 16.) The Court will address this issue if and when the defense calls a witness at trial.

[2] Pina pled guilty to one count of bank fraud on May 13, 2015. (Case No. 12-215, Docket No. 416.) The Court sentenced Pina to the time he had already served, and two years of supervised release. Id., Docket No. 496.

Criminal No. 20-258 (FAB)                                                3

at p. 7.  The United States responded, Pina replied, and the United States filed a surreply.  (Docket Nos. 172, 175 & 178.)

## II. The Motion to Dismiss

The Federal Bureau of Investigation ("FBI") received information from a confidential human source ("CHS") on August 17, 2020 and October 2, 2020, four months after the commencement of this criminal action.  (Docket No. 168, Exs. 1 & 2.)  FBI agent Justin Turner memorialized this information in two reports of investigation ("ROI").  Id.  The August 17, 2020 ROI provides that

> [REDACTION] Roberto Morales (Morales) a/k/a Robert, who is the brother-in-law of Rafael Pina-Nieves (Pina). Pina is looking for an individual who will claim ownership of the firearms and ammunition, discovered in Pina's residence, and who will claim they placed the items inside the residence without Pina's knowledge. The rifle that was removed from the safe prior to the FBI executing the search warrant was provided to Pina by Joed Romero-Soler and is a model M&P [REDACTION] unaware of the location of the rifle.  Pina is fearful of the FBI seizing his assets and thinking of moving assets into the names of friends and family in the near future.

(Docket No. 168, Ex. 1 at p. 2.)  On October 2, 2020, the CHS stated that:

Criminal No. 20-258 (FAB)                                               4

> Rafael Pina-Nieves (Pina) had a meeting with his attorney's (*sic*), after having received evidence from the U.S. Attorney's Office associated with his pending charges and trial. As a result, Pina gathered his family and associates on his new yacht to discuss the case. Pina was advised by his attorney's (*sic*) he will most likely have to spend time in prison, as a result of the charges. Pina's attorney will reach out to the U.S. Attorney's Office in the near future to broker a plea agreement. During this meeting on the yacht, Pina prepared his family and associates for the likelihood of his serving time in prison and handed down responsibilities to his associates on how to run the business, in his absence.
>
> It was also discussed, during the meeting, for Pina or his associates to pay a local police officer to run the serial numbers of the guns in order to see if they are registered to anyone or reported stolen. This would be done to aid in Pina's defense. Pina decided not to go through with this because he feared it could cause more legal problems if it was discovered that they paid a police officer to run the serial number of the firearms.

(Docket No. 168, Ex. 2 at p. 2.) According to Pina, the ROIs "reflect that the government placed an informant inside [Pina's] defense camp who was reporting to the government the content and substance of [Pina's private communications]." (Docket No. 168 at p. 2.)

The Sixth Amendment of the United States Constitution provides that in all criminal prosecutions "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. A defendant is "denied the basic protections of [this] guarantee when the [United States uses] against him evidence of his own incriminating words, which federal agents had

Criminal No. 20-258 (FAB)                                                              5

deliberately elicited from him after he had been indicted and in the absence of his counsel." Massiah v. United States, 377 U.S. 201, 206 (1964); see United States v. Ocean, 904 F.3d 25, 33 (1st Cir. 2008) ("A successful Massiah objection requires a defendant to show, at a bare minimum, that the person with whom he conversed had previously been enlisted for that purpose by the authorities.") (internal citation and quotation omitted).

The United States informed the Court that "no confidential source has contacted [Pina] either in person, or through electronic telecommunications" from the date of indictment to the present. (Docket No. 178 at p. 1.) In fact, the "information in the reports originates (*sic*) from information provided to the [CHS] by persons other than [Pina] and his attorneys." Id. Essentially, Pina spoke with individuals within his inner circle regarding the charges set forth in the indictment, these individuals then divulged this information to the CHS, who informed the FBI about *inter alia* the meeting on the yacht, a potential scapegoat, and defense strategy. In any event, the ROIs do not, in and of themselves, alert the Court that the CHS directly communicated with Pina.

The Assistant United States Attorneys appearing in this matter are officers of the Court, subject to the Model Rules of Professional Conduct. See Model Rules of Prof'l Conduct r. 3.3(a)

("A lawyer shall not knowingly (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."). The Court takes the United States at its word. Because the CHS has had no contact with Pina or his attorneys, no Sixth Amendment violation occurred. Accordingly, Pina's motion to dismiss is **DENIED.**

### III. The Motion to Suppress

The United States obtained a Title III warrant to intercept conversations and voice-mail messages to and from Pina's cellular phone. (Docket No. 172 at p. 3). Title III surveillance must occur "in such a way as to minimize the interception of communications not otherwise subject to interception." 18 U.S.C. § 2518(5). The FBI must "stop listening and/or recording when it [becomes] apparent that a conversation was not related to the criminal investigation." United States v. Gordon, 871 F.3d 35, 47 (1st Cir. 2017). To ascertain whether the United States minimized interceptions in accordance with Title III, the Court "make[s] an objective assessment in light of the facts and circumstances known to the government at the relevant points in time." United States London, 66 F.3d 1227, 1236 (1st Cir. 1995) (citation omitted). Factors including "1) the nature and complexity of the suspected crimes; 2) the thoroughness of the government's precautions to

Criminal No. 20-258 (FAB)                                                              7

bring about minimization; and 3) the degree of judicial supervision over the surveillance process" are material. Gordon, 871 F.3d at 48. Minimization is "analyzed on a case-by-case basis looking to the reasonableness of the interceptor's conduct." United States v. López, Case No. 99-079, 2000 U.S. Dist. LEXIS 8060 at *21 (D. Me. Apr. 28, 2000) (citing United States v. Hoffman, 832 F.2d 1299, 1308 (1st Cir. 1987).

On the date that law enforcement officers searched Pina's residence, he made the following calls to defense counsel:

(1) Call 1335 (33 seconds, no minimization)

(2) Call 1337 (1 minute 31 seconds, no minimization)

(3) Call 1356 (1 minute 31 sections, no minimization)

(4) Call 1357 (2 minutes 6 seconds, two minimizations)

(5) Call 1381 (1 minute 6 seconds, two minimizations)

(6) Call 1496 (52 seconds, one minimization)

(7) Call 1571 (25 seconds, no minimization)

(8) Call 1584 (34 seconds, one minimization)

(Docket No. 178 at p. 6.) Pina moves to suppress **all** interceptions for failure to comply with the minimization requirements in Title III during the eight conversations with defense counsel. (Docket No. 168 at p. 7) (emphasis added).

Even if the United States intercepted the phone calls between Pina and defense counsel in violation of Title III, wholesale

Criminal No. 20-258 (FAB)                                              8

suppression is inappropriate.  See Gordon, 871 F.3d at 47 ("A minimization violation often can be cured through a less draconian remedy: suppression of only those calls that the court determines should have been minimized.") (citation omitted).  The Assistant United States Attorneys "have not listened to the content of [these] calls."  (Docket No. 178 at p. 4.)  Because the United States has no intention of adducing the interceptions between Pina and defense counsel at trial, the motion to suppress is **DENIED AS MOOT**.

**IV. Defense Counsel's Statements and Federal Rule of Evidence 801(d)(2)(C) and (D)**

According to the United States, two statements made by Rebollo in Pina's motion to dismiss are admissible pursuant to Federal Rule of Evidence 801.  (Docket No. 172 at p. 13.)  First, Rebollo presented the following argument: "Just the fact that the government learned that [Pina] was resigned to the fact that he would have to spend time in prison is a tremendous advantage to have in plea negotiations."  (Docket No. 168 at p. 4.)  Second, Rebollo asserted that the October 2, 2020 ROI "reflects that the defense had considered doing some specific tracing of the guns at issue which would allow the defense, depending on the results of the tracing, to fashion appropriate arguments at trial."  Id. at

Criminal No. 20-258 (FAB)                                                9

p. 1.  The United States maintains that these statements evince a consciousness of guilt.  (Docket No. 172.)

Federal Rule of Evidence 802 prohibits hearsay.  Fed. R. Evid. 802.  Hearsay is an out-of-court statement offered "in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  The Rules of Evidence set forth exemptions and exceptions to the hearsay prohibition.  See, e.g., Fed. R. Evid. 801(d)(2) (setting forth exemptions to hearsay).  An admission by a party opponent is not hearsay if the "statement is offered against the opposing party" and "was made by a person whom the party authorized to make a statement on the subject."  Fed. R. Evid. 801(d)(2)(C).

As defense counsel, Rebollo is authorized to represent Pina before the Court.  Rebollo's statements are, thus, attributable to Pina.  See 2 McCormick On Evid. § 257 (7th ed. 2013) ("The dominant position . . . is that pleadings shown to have been prepared or filed by counsel employed by the party are *prima facie* regarded as authorized by the client and are entitled to be received as admissions."); 4 Weinstein's Evidence 801-221 ("Once agency, and the making of the statement while the relationship continues are established, the statement is exempt from the hearsay rule so long as it relates to a matter within the scope of the agency."); see e.g., United States v. López-Ortiz, 648 F. Supp. 2d 241, 246-47

Criminal No. 20-258 (FAB)                                          10

(D.P.R. 2009) (An affidavit submitted by the United States to a magistrate judge in support of a search warrant is admissible pursuant to Rule 802(d)(2) as admission by a party opponent) (Besosa, J.).  Admissions by defense counsel fall within the purview of Rule 801.  See Laird v. Air Carrier Engine Serv., Inc., 263 F.2d 948, 953 (5th Cir. 1959) ("An attorney has wide authority in the conduct of litigation. He is chosen to speak for the client in Court. When he speaks in Court, whether it be on a formal trial or in an informal pretrial, he speaks for and as the client."); Williams v. Union Carbide Corp., 790 F.2d 552, 555-56 (6th Cir. 1986) ("It is the general rule that statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney."); United States v. Cook, Case No. 16-50, 2018 U.S. Dist. LEXIS 209029, at *23 (D. Del. Dec. 11, 2018) ("[The Court] finds that the statements of Defendant's prior counsel at the July 2013 meeting are admissions by an authorized agent of a party opponent and not hearsay under Rule 801(d)(2)(C) and (D)."). Accordingly, Rebollo's statements regarding Pina's acceptance of imprisonment and firearm tracing are admissible.

Pina argues that Rebollo's statements merely repeat and rephrase "statements made by a third party – the informant – in order to be able to frame the issue for the Court." (Docket No.

Criminal No. 20-258 (FAB)                                                    11

175 at p. 4.)  Pina contends that he is a "completely innocent person, who [knew] and fully believe[d] himself to be completely innocent."  Id.  Because the federal conviction rate is 97%, however, Pina resigned himself to a guilty verdict.  Id.  The jury may weigh the credibility of this argument if made at trial.

**V. Conclusion**

For the reasons set forth above, Pina's motions to dismiss and suppress are **DENIED**.  (Docket No. 168.)  The United States motion to admit Rebollo's statements as admission by a party opponent is **GRANTED**.  (Docket No. 172.)  Trial is set commence **on December 13, 2021 at 9:00 AM** before the undersigned in Courtroom 2.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 12, 2021.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE