```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF PUERTO RICO
```

| UNITED STATES OF AMERICA, | |
|---|---|
| **Plaintiff,** | |
| v. | **Criminal No.** 20-258 (FAB) |
| RAFAEL PINA-NIEVES, | |
| **Defendant.** | |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Rafael Pina-Nieves ("Pina")'s motion to exclude evidence pursuant to Federal Rule of Evidence 404(b). (Docket No. 205.) For the reasons set forth below, Pina's motion *in limine* is **DENIED**.

## I. Background

Pina is a reggaeton music producer and owner of Rogelio's gas station in Caguas, Puerto Rico. (Docket No. 52, Ex. 2 at p. 8.) This business is managed by Joed Romero-Soler ("Romero"), Pina's "close confidant" and personal accountant. Id. at p. 11. On February 6, 2020, the FBI intercepted a conversation between

Criminal No. 20-258 (FAB)                                            2

Pina and Romero (hereinafter, "Call 121").[1]  The following is an excerpt from this interception:

    Pina: And what do we do with **the safe**, motherfucker?

    Romero: Bro, right.  You have that there built-in. A whole ordeal, right?  No, man, leave it open.

    Pina: Man, yes.

    Romero: You know, and take out whatever you have . . . and, if you have anything . . . and leave it open behind there so that [unintelligible] there and uses it.  You know, tell Miguel to reset it.  You know, that, look . . .

    Pina: Nah, nah, bro, I have money and **I have all sorts of things in there: my guns, rifles, bullets.**

    Romero: Well, exactly, have Miguel take out anything he needs to take out.  You know what you have in there, right?

    Pina: Yes, but no, no . . . I'm not giving that motherfucker anything.

    Romero: Well, I don't know . . . and . . . and . . . you know, the guns?  Give them to Jonny.

    Pina: No because all of that is *cuenta loca* [literally: crazy account].

See Docket No. 98 at p. 4; Docket No. 114, Ex. 2 at pp. 11-13 (emphasis added).

---

[1] United States District Court Judge Raúl Arias-Marxuach issued an interception order on February 4, 2020 pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. sections 2510-22.  (Docket No. 52, Ex. 1.)  This order authorized the United States to record surreptitiously conversations and voice-mail messages to and from Romero's cellular phone. (Docket No. 52, Ex. 1.)

Criminal No. 20-258 (FAB)                                              3

    Subsequently, law enforcement officers executed a search warrant at Pina's residence on April 1, 2020, seizing one 9mm Glock pistol, one .40 caliber Smith & Wesson pistol, and 526 rounds of ammunition from a concealed safe.  Id. at p. 4.  On August 13, 2020, a grand jury returned an indictment charging Pina with possession of a firearm by a convicted felon (count one), and possession of a machinegun (count two), in violation of 18 U.S.C. sections 922(g)(1) and 922(o), respectively.  (Docket No. 1.)[2]

    On the third day of trial, Pina moved to exclude Call 121 pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)"). (Docket. No 205.)  The United States responded, and Pina replied. (Docket Nos. 216 & 225.)

## II. Federal Rule of Evidence 404(b)

    Pursuant to Rule 404(b), "evidence of prior bad acts is not admissible to show the actor's bad character or propensity to commit crime." United States v. Hicks, 575 F.3d 130, 141 (1st Cir. 2009) (citation omitted).  This evidence presents an "unacceptable risk that the jury will convict the defendant for crimes other than those charged." United States v. Castro-Ward,

---

[2] Pina pled guilty to one count of bank fraud on May 13, 2015.  (Case No. 12-215, Docket No. 416.)  The Court sentenced Pina to the time he had already served, and two years of supervised release.  Id., Docket No. 496.

Criminal No. 20-258 (FAB)                                                    4

323 F. Supp. 3d 304, 306 (D.P.R. 2018) (Besosa, J.) (quoting United States v. Arias-Montoya, 967 F.2d 708, 709 (1st Cir. 1992)).

### A. The Prior Bad Act-Intrinsic Evidence Dichotomy

Rule 404(b) pertains to "other" bad acts that do not constitute direct evidence of a charged offense. See United States v. Mare, 668 F.3d 35, 39 (1st Cir. 2012). Accordingly, evidence falls within the ambit of Rule 404(b) **only** if it is **extrinsically** relevant. See United States v. Epstein, 426 F.3d 431, 439 (1st Cir. 2005) ("Rule 404(b), by its very terms, excludes only extrinsic evidence – evidence of other crimes, wrongs, or acts – whose probative value exclusively depends upon a forbidden inference of criminal propensity. Evidence **intrinsic** to the crime for which defendant is on trial, accordingly, is not governed by Rule 404(b).") (citation and quotation omitted) (emphasis added); United States v. Dorsey, 677 F.3d 944, (9th Cir. 2012) ("We agree with the district court that the testimony of [the witnesses] about seeing [the defendant] with a Glock or Glock-like gun . . . bore directly on the commission of the charged crime," thus, "it was inextricably intertwined with those crimes and outside the scope of 404(b).").

The terms "intrinsic" and "prior bad act evidence" are "loose labels," subject to a fact-specific inquiry. United States v. Randazzo, 80 F.3d 623, 630 (1st Cir. 1996).   Prior bad acts

Criminal No. 20-258 (FAB)                                                5

are "reasonably distinct (*e.g.* in time and place) from the crime charged in the indictment." Id. By contrast, intrinsic evidence is "more closely entangled with the events that comprise the charged offense." Id. For instance, "[u]ncharged acts [that] illuminate the chronology of events leading to the acts charged in an indictment, or that inform the jury concerning the circumstances surrounding the commission of the charged crime" are generally admissible. 1 Weinstein's Evidence Manual § 7.01 (2021). The intrinsic evidence doctrine is applied "broadly" by the First Circuit Court of Appeals. Id. (citing United States v. Robles-Álvarez, 874 F.3d 46, 50-51 (1st Cir. 2017) (affirming the admission of intrinsic evidence to prove "how the various co-conspirators came together").

### III. Call 121 is Admissible as Direct Evidence

Pina asserts that Call 121 contains "uncharged bad act evidence." (Docket No. 205 at p. 3.) He maintains that the United States cannot establish that the firearms and ammunition which federal agents seized on April 1, 2020 are the same "guns, rifles, [and] bullets" he possessed on February 6, 2020, the date of Call 121. Id. at p. 3. He further claims that the jury will draw the following inference: Because he possessed firearms on February 6, 2020, he possessed firearms on April 1, 2020. Id.

Pina assumes, however, that Call 121 is a prior bad act extrinsic to the charged offenses. It is not. This interception is direct evidence of the crimes charged in the indictment, rendering Rule 404(b) inapplicable. See United States v. Robles-Álvarez, 874 F.3d 46, 50 (1st Cir. 2017) (affirming the admission of a smuggling trip to Antigua because it provided a "necessary description of the events leading up to' the charged crime, [conspiracy to import controlled substances], holding that evidence "concerning matters intrinsic to the crime charged does not 'trigger' [Rule 404(b)]") (citing United States v. Souza, 749 F.3d 74, 84 (1st Cir. 2014)).

To establish a violation of section 922(g)(1), the United States must prove, beyond a reasonable doubt, that Pina "had a prior felony conviction for an offense punishable by imprisonment for a term exceeding one year and had knowing possession of a firearm in or affecting interstate commerce." United States v. Scott, 564 F.3d 34, 39 (1st Cir. 2009). The *mens rea* element is satisfied by proving that the defendant knowingly had actual or constructive possession of a charged firearm. United States v. Guzmán-Montañez, 756 F.3d 1, 8 (1st Cir. 2014). Because law enforcement officers seized the altered 9mm Glock pistol, the .40 caliber Smith & Wesson pistol, and 526 rounds of ammunition at a residence in Caguas, the pertinent inquiry is whether Pina had

Criminal No. 20-258 (FAB)                                                              7

control of the Caguas residence where the pistols were found.  Id. ("'Constructive possession' exists when the defendant knowingly has power and intention at a given time to exercise dominion and control over the firearm, either directly or through others."); United States v. Powell, 50 F.3d 94, 100 (1st Cir. 1995) ("[One] can possess an object while it is hidden at home in a bureau drawer or while held by an agent, or even while it is secured in a safe deposit box at the bank and can be retrieved only when a bank official opens the vault") (citation and quotation omitted).

Call 121 places the search warrant in context and clarifies the progression of events from the date of the search warrant to the indictment.  That Pina referred to guns (plural), rifles, and bullets (plural) on February 6, 2020 during the intercepted telephone call is powerful evidence that he knowingly possessed the pistols and ammunition on or about April 1, 2020, when the search took place.  See United States v. Fazal-Ur-Raheman-Fazal, 335 F.3d 40, 50 (1st Cir. 2004) ("[The] district court supportably concluded that Ali's testimony was not being introduced as evidence of [the defendant's] character for violence or criminal propensity; rather, it was being introduced as part of Ali's necessary description of the events leading up to the crimes and as intrinsic evidence of an element of the charged offense . . . Accordingly, the court acted within its discretion both in

Criminal No. 20-258 (FAB)                                              8

declining to treat the testimony as 404(b) evidence and in determining its admissibility under Rules 401 and 403."); Epstein, 426 F.3d at 439 ("The judge did not abuse his discretion in finding the tax return to be part and parcel of the crime and properly allowed the evidence as intrinsic to the crime and not governed by Rule 404(b).").

Call 121 was the basis for the search warrant executed. Because Call 121 is intrinsic to the charged offense, the Court need not assess Pina's Rule 404(b) argument.  See Souza, 748 F.3d at 84 n.2 ("Because we conclude that the evidence was intrinsic to the charged crime and went to the issue of Souza's intent, we need not address his argument that the evidence was inadmissible pursuant to Rule 404(b).") (citing Mare, 668 F.3d at 39 (affirming the admission of the defendant's statement to "shed relevant light on his mindset in committing the charged crime," noting that this evidence "concerned matters intrinsic to the crime charged and therefore did not trigger Rule 404(b)") (citation omitted)); United States v. Roszlowski, 700 F.3d 50, 56 (1st Cir. 2012) ("[The Court] needn't reach the question of propensity; the fact that Roszkowski discharged his weapon is intrinsic to its felonious possession . . . Thus, the evidence is not 'other acts' evidence at all, and accordingly, Rule 404(b) is not implicated.")

### A. Federal Rule of Evidence 403

This Court "may exclude relevant evidence if its probative value is substantially outweighed by [unfair prejudice]." Fed. R. Evid. 403. The First Circuit Court of Appeals has emphasized that Rule 403 protects "against *unfair* prejudice, not against all prejudice." United States v. Whitney, 524 F.3d 134, 141 (1st Cir. 2008) (emphasis added); see also United States v. Bauzó-Santiago, 51 F. Supp. 3d 198, 199 (D.P.R. 2014) (Besosa, J.) ("In balancing the scales of Rule 403, it is important to note that only unfair prejudice is to be avoided, as by design all evidence is meant to be prejudicial") (citation and internal quotation omitted). Pursuant to Rule 403, trial courts possess "considerable latitude in determining whether to admit or exclude evidence." Santos v. Sunrise Medical, 351 F.3d 587, 592 (1st Cir. 2003) (internal citations omitted). When the balance between the probative value and unfair prejudice of contested evidence is close, "Rule 403 tilts the balance in favor of admission." Whitney, 524 F.3d at 141 (internal citations omitted).

The probative value of Call 121 outweighs the danger of unfair prejudice. Additionally, the Court may mitigate any danger of unfair prejudice, such as by giving a limiting instruction to the jury. See United States v. Richardson, 515 F.3d 74, 83 (1st Cir. 2008) ("[W]e note that the district judge limited any

Criminal No. 20-258 (FAB)                                              10

prejudice that might result from admission of other crime evidence by instructing the jury to consider the evidence separately as to each count"); United States v. Baltas, 236 F.3d 27, 34 (1st Cir. 2001) (holding that the appropriate limiting instruction provides an adequate safeguard against evidentiary spillover prejudice). Consequently, the motion to exclude Call 121 is **DENIED**.

**IV. Conclusion**

For the reasons set forth above, Pina's motion in limine is **DENIED**. (Docket No. 205.) Trial shall resume **on December 20, 2021 at 9:00 AM** before the undersigned in Courtroom 2.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 18, 2021.

> s/ Francisco A. Besosa
> FRANCISCO A. BESOSA
> UNITED STATES DISTRICT JUDGE