# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **RAFAEL PINA-NIEVES**, <br><br> Defendant. | **CRIMINAL CASE NO:** 20-258 (FAB) |

## DEFENDANT'S OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT

COMES NOW the defendant, Rafael Pina-Nieves, through the undersigned counsel, and files this objection to the Amended Presentence Investigation Report ("PSR"; Docket No. 376) prepared in this case. Specifically, Mr. Pina-Nieves objects to the calculation of his total offense level (PSR, ¶33) and the failure of the USPO to acknowledge certain grounds for a downward variance.[1] In support of this objection the defendant respectfully states as follows:

**Introduction**

1. The amended PSR was prepared in connection with Count One of the Indictment after the First Circuit Court of Appeals reversed the conviction on Count Two.[2] Count One charged the possession of firearms and ammunition by a convicted felon, in violation of Title 18, *United States Code,* Section 922(g)(1) and 924(a)(2).

2. The PSR determined that the Total Offense Level ("TOL") for Count One was a 20, based on the determination that a machine gun was involved in the offense (as charged

---

[1] Informal objections to the PSR were sent to the USPO on March 24, 2023, but a response to those objections has not yet been received. These formal objections are being filed despite the failure of the USPO to respond to our informal objections, in order to avoid running afoul of the Court's order directing that objections to the PSR were to be filed by April 10, 2022. (*See* Docket No. 377.)

[2] Count Two charged the possession of a machinegun, in violation of title 18, *United States Code*, Section 922(o) and 924 (a)(2). PSR at ¶ 3.

___

in Count Two of the Indictment). The PSR justifies the enhancement based on "the rules of Expanded Relevant Conduct" pursuant to the provisions of USSG §1B1.3(a)(2). (*See* PSR at p, 8, fn. 4.)

## The Rules of Expanded Relevant Conduct Should not be Applied to Enhance the BOL

### a. Application of the Sentencing Enhancement Constitutes a Substantive Due Process Violation and Punishes Pina-Nieves for Circumstances for which he Lacked Knowledge

The rules of expanded relevant conduct should not be applied in this case to justify the application of a six-level enhancement to increase the TOL to 20.[3] The enhancement would significantly increase the guideline sentencing range ("GSR") for Mr. Pina-Nieves, on account of the machine gun, in the absence of evidence that the defendant had any knowledge that the offense involved an automatic weapon. In fact, the First Circuit acquitted the defendant on the machine gun count (Count Two) based on an explicit finding that the record lacked evidence upon which a reasonable juror could find that Mr. Pina-Nieves had knowledge of the automatic features of the weapon. In other words, in addition to proving the possession or transfer of the weapon in question, the government was also required to prove that Mr. Pina-Nieves "had knowledge of the characteristics that brought the gun within the statutory definition [of a machine gun]." *United States v. Nieves-Castaño*, 480 F.3d 597, 599 (1st Cir. 2007). The Government failed to do so and Mr. Pina-Nieves was thus acquitted of possession of the automatic weapon in question.

Now, Mr. Pina-Nieves faces a resentencing in this case burdened only by the conviction on Count One of the Indictment, which does not implicate an automatic weapon. If he is sentenced

___

[3] Absent any enhancements, the TOL for the charge of simple possession of a non-automatic firearm is a level 14, which yields a GSR of 15–21 months. *See* USSG §2K2.1(a)(6).

___

at a level 20, despite his acquittal on Count Two, he would be subject to the same offense level that would have resulted had Count Two not been disturbed on appeal. In other words, the government seeks to obtain a sentencing result that nullifies the decision of the First Circuit and applies the enhancement in the absence of evidence that Mr. Pina-Nieves had any knowledge that one of the two weapons was illegally modified to fire automatically. The defendant suggests that the government's use of the Sentencing Guidelines to sidestep its inability to prove the possession of the machine gun charge, thereby obtaining the same penalty for the defendant, offends notions of due process. *See United States v. Fox,* 889 F.2d 357 (1st Cir. 1989), *United States v. Reynolds,* 900 F.2d 1000, 103-04 (7th Cir. 1990), and *United States v. Mobley,* 956 F.2d 450 (3d Cir. 1992)(Mansmann, J., dissenting). Stated differently, imposing an elevated TOL for an offense involving an automatic weapon in the absence of a conviction on the very count that supports Mr. Pina-Nieves' possession of that weapon during the offense will violate Mr. Pina-Nieves' substantive due process rights.

Judge Mansmann, in his dissenting opinion in the case of *United States v. Reynolds*, provided insight into the difficulties inherent in the removal of the *scienter* requirement by the Sentencing Guidelines (in that case for possession of a stolen firearm) in order to elevate the guideline sentencing exposure for an offense in which Congress had specifically required knowledge, to wit:

> "Congress has not remained silent on the scienter requirement [for a stolen firearm enhancement] and delegated all of its authority to the Sentencing Commission; rather, Congress has explicitly made a scienter a requirement in substantive offenses under which the government declined to prosecute [the defendant]. Thus Congress has not indicated that the offense of possession of a stolen gun is a mere regulatory one for which scienter is not a required element. Where Congress has chosen to require scienter for proof of a crime, I am not persuaded that Congress'

designee, the Sentencing Commission, may transform that same conduct, minus scienter, into a sentencing factor, which then applied yields an equivalent sentence range as would an additional conviction. Further, I am not convinced that the broad delegation of authority for creating the Sentencing Guidelines reaches so far nor that the regulatory exception to the presumption against strict liability in a statutory construction context permits this result, which is inconsistent with due process. *Id.* at 463.

The application of the automatic weapon enhancement for Mr. Pina-Nieves in this case yields a similar undesired result, effectively eliminating the knowledge requirement and imposing strict liability, resulting in a TOL of 20, which is precisely the level that would have applied had the conviction on Count Two been affirmed on appeal. In other words, the application of the enhancement transforms the offense charged in Count Two into a sentencing factor, but eliminates the *scienter* element, arriving at a sentence which is equivalent to the sentence the defendant would have received had he been convicted on Count Two.

The defendant has conducted arduous research concerning the *scienter* element of the automatic weapon enhancement. While ample case law has been located regarding the knowledge element of other offense enhancements and, specifically, firearm offense enhancements, none has been specifically located with respect to the automatic weapon feature of Section 2K2.1.

In particular, ample jurisprudence exists addressing the stolen firearm enhancement mandated by § 2K2.1(b)(4). That section does not specify whether its application requires *scienter*. However, the Commentary at note 8(B) clarifies that no knowledge is required on the part of the defendant, despite the fact that the Supreme Court has resolved that *mens rea* is required in offenses involving firearm possession. *See*, for example, *Staples v. United States*, 511 U.S. 600, 602, 114 S.Ct. 1793 (1994). In *Staples,* the defendant was convicted of possession of a semiautomatic rifle (machine gun). Although the statute did not expressly require the defendant

---

to know that the weapon was a machine gun, the Supreme Court concluded that the government was required to prove that the defendant was aware of the characteristics that brought the firearm within the statutory definition of a machinegun. *Id.* at 619-20. In so doing the Court rejected the government's argument that the statute fell within the ambit of "public welfare" or "regulatory" offenses for which the presumption of *mens rea* should not apply. Neither the automatic weapon enhancement nor its Commentary provide clarity regarding the issue of *scienter*. No policy reason or rationale is provided for the application of the two-level aggravator for the automatic weapon enhancement.[4] The stolen firearm enhancement likewise lacks a rationale justifying its mechanical application, despite the Commentary which eliminates the knowledge requirement.

Judges have struggled to reconcile the strict liability application of the stolen firearm sentencing enhancement, recognizing that the counterpart criminal statute requires *mens rea* on the part of the defendant, in accord with the fundamental principal that a culpable state of mind is normally required for the commission of a crime. Notably, in the case of *United States v. Handy*, 570 F.Supp.2d 437 (E.D.N.Y. 2008), the Honorable Jack B. Weinstein held invalid the stolen firearm sentencing enhancement despite the purported authority of the Sentencing Guidelines to mechanically apply the two-level enhancement: "Because the enhancement does not require the defendant to know or have reasonable cause to believe that the he possessed was stolen, it does not provide deterrence since a person cannot be deterred from doing what he or she does not know

---

[4] The Sentencing Guidelines also provide another two-level strict liability enhancement for firearms with an altered or obliterated serial number in U.S.S.G. §2K2.1(b)(4), but require *mens rea* for the application of a two-level enhancement for possession of stolen explosives. *See* U.S.S.G. § 2K1.3(b)(2).

___

is being done. 18 U.S.C. § 3553(a)(2)(B). Because it lacks a requirement of scienter, the enhancement does not reflect the seriousness of the offense, promote respect for the law or provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A)." *Id.* at 480. Ultimately, the Court disallowed the application of the two-level enhancement for the stolen firearm, on the basis that the evidence did not support a finding that the defendant knew or had reason to know that the gun he possessed was stolen. *Id.*

The precise reasoning that predicated Judge Weinstein's decision is equally applicable to this case, in the absence of facts that support the defendant's knowledge that the Glock firearm was an automatic weapon.

    **b. Relevant Conduct Requires Conduct Attributable to the Defendant.**

The Sentencing Guidelines provide that all sentencing enhancements must be determined according to the Relevant Conduct provisions of Section 1B1.3. That section provides, *inter alia,* that specific offense characteristics shall be determined by "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant…". In keeping with the plain language of this seminal guideline principle, it is evident that the enhancement for the machine gun is being applied to Mr. Pina-Nieves despite the fact that the record is barren of evidence that he was aware of the automatic nature of the firearm. It is the presence of the automatic weapon that invites application of the enhancement, as USSG §2K2.1 predicates the six-level enhancement on whether "the **offense** involved a [machinegun]". The First Circuit opinion already exonerated Mr. Pina-Nieves on the charge of possession of the machine gun.

___

Notably, the application of the enhancement operates contrary to the letter and spirit of the Sentencing Guidelines. Put simply, since Mr. Pina-Nieves was unaware that the Glock was a machinegun, he cannot reasonably be said to have committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused the underlying offense, which is the possession of the machinegun.

In considering the mechanical application of Sentencing Guideline enhancements, Courts have often declined to apply these aggravators to increase a defendant's sentence where the facts giving rise to the enhancement are factually unconnected to the defendant's conduct, in keeping with the dictates of Section 1B1.3. By way of example, consider the ten-point enhancement under Guideline Section 2L1.1(b)(7) applicable to alien smuggling offenses where a death occurs. As in the case of the automatic weapon enhancement, Section 2L1.1(b)(7) does not contain a *scienter* requirement, simply posing the question of whether a death occurred as a predicate to the application of the enhancement. Even Courts that declined to apply the rule of lenity to impose a *scienter* requirement or causal connection to the defendant's conduct, refused to impose the enhancement for resulting death where the defendant's conduct was causally unconnected to the harm, based on a reasoning that these circumstances did not comport with the definition of "relevant conduct" under the Sentencing Guidelines. The ordinary language of the rules of relevant conduct in Section 3B1.3 compel that specific offense characteristics be determined by the

___

defendant's conduct. *See*, for example, *United States v. Ramos-Delgado*, 763 F.3d 398 (5th Cir. 2014).[5]

While the alien smuggling and automatic firearm enhancements are factually dissimilar, the cases exemplify the requirement that relevant conduct under the Sentencing Guidelines be determined based on the defendant's conduct, even under circumstances where the enhancement involves a provision that imposes strict liability. In this case, the evidence does not support the contention that Mr. Pina-Nieves was aware that the Glock had the features to bring it within the definition of an automatic weapon, therefore, the enhancement for the involvement of the automatic weapon in the offense should not be considered relevant conduct for purposes of enhancing the defendant's sentence.

### c. Relevant Conduct Must Meet the Preponderance of Evidence Standard

The PSR concedes that the BOL calculation of 20 is predicated on the use of "expanded relevant conduct". PSR at fn. 14 p. 8. In other words, the enhancement is based on conduct other than the charged offense.

"Relevant conduct" refers to "the range of conduct that is relevant to determining the applicable offense level" under the Guidelines Manual. See §1B1.3 comment. Relevant conduct is a creature of the USSG and provides explanations for the application of rules that determine the acts or omissions which constitute relevant conduct. Subsection 1B1.3 provides that, in every case,

___

[5] A majority of the Circuits (Eighth, Ninth, Eleventh, and Fifth Circuits) have interpreted Section 2L1.1(b)(7) as requiring a causal link between the resulting death and the defendant's conduct. *See United States v. Flores-Flores,* 356 F.3d 861 (8th Cir. 2004), *United States v. Herrera Rojas,* 243 F.3d 1139 (9th Cir. 2001), and *United States v. Zaldivar,* 615 F.3d 1346 (11th Cir. 2010). In the only case considered by the First Circuit the court determined that causality was present, which did not require that the Court reach the ultimate issue of the causation requirement. *United States v. Ortiz-Carrasco*, 863 F.3d 1 (1st Cir. 2017).

___

relevant conduct includes **actions of the defendant** performed in preparation for the offense, during the offense, and after the offense to avoid detection. [emphasis ours] Consequently, relevant conduct is based on acts the defendant counseled, commanded, induced, procured, or willfully caused. *Id.*

It is well-settled that "[f]acts underlying Guideline offense-level increases need only be proven by a preponderance of the evidence".[6] *United States v. Gonzalez*, 857 F.3d 46, 58 (1st Cir. 2017); *see also United States v. Malouf*, 466 F.3d 21, 26 (1st Cir. 2006)(due process and Sixth Amendment are satisfied if sentencing facts were supported by a preponderance of the evidence standard). Accordingly, if sentencing facts are arbitrarily applied with an inadequate factual foundation, a defendant's constitutional rights would be thwarted.

In its appellate opinion reversing the machine gun count, the First Circuit made explicit and unequivocal findings regarding the paucity of evidence establishing Pina-Nieves' knowledge of the characteristics of the automatic weapon. Specifically, The First Circuit concluded that there was no evidence to support the inference that Mr. Pina-Nieves was aware of the automatic nature of the Glock pistol: "To conclude that Pina-Nieves … knew that the machinegun could fire fully automatically, a juror would have to infer that Pina-Nieves had either seen it [sufficiently] or had been told [of these characteristics] even though he had never seen it." *See* Case No. 22-1421 at p. 11. The Court also discusses the absence of evidence regarding when the Glock was modified, the absence of evidence that Pina-Nieves had ever been advised of the modification, the absence of

___

[6] The preponderance of the evidence standard was promulgated by the U.S. Sentencing Commission and is not derived from common law. The commentary to a policy statement at U.S.S.G. § 6A1.3 sets forth that "[t]he Commission believes that use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case."

___

evidence that Pina-Nieves had been at the Caguas Real house where the weapon had been kept after the purchase of the Glock, and the fact that Pina-Nieves had not been residing in that house. *Id.* The First Circuit unmistakably concluded that they could "not see how a rational juror could make the requisite inference that Pina-Nieves knew that this weapon had the characteristics of a machinegun other than by **engaging in just the kind of speculation or inference-stacking that cannot suffice to support a conviction.**" *Id.* [emphasis ours]

Generally, courts have upheld the use of the preponderance of the evidence standard at sentencing, finding that it comports with constitutional constraints in a post-Booker landscape. *See*, e.g., *United States v. Fisher*, 502 F.3d 293 (3d Cir. 2007), *United States v. Villareal-Amarillas*, 562 F.3d 892 (8th Cir. 2009), and *United States v. Smith*, 370 Fed.Appx. 29 (11th Cir. 2010). However, a higher standard of clear and convincing evidence may be required where a sentencing factor has a disproportionate effect on the ultimate sentence. *See United States v. Staten*, 466 F.3d 708, 718 (9th Cir. 2006)("[A] heightened burden may be required post-*Booker* to satisfy due process concerns" in cases where a sentencing factor has a disproportionate effect on the sentence", *citing United States v. Kilby,* 443 F.3d 1135, 1140 n. 1 (9th Cir. 2006)); *see also United States v. Dare*, 425 F.3d 534, 642 (9th Cir. 2005); *United States v. Lynch*, 437 F.3d 902, 916 (9th Cir. 2006); and *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999), *cert. denied*, ___ U.S. ___, 126 S.Ct. 2959, 165 L. E.2d 970 (2006).

In *Staten* the enhancement which had a "disproportionate effect" on the sentence "increased [the] offense level by more than four levels and more than doubled [the] sentence." *Staten, supra,* 466 F.3d at 718. In this case, the result of the application of the enhancement is

similar for Mr. Pina-Nieves, increasing the TOL by six-levels and doubling his guideline imprisonment range.

Given the categorical nature of the First Circuit's assessment of the evidence introduced by the government at trial regarding the defendant's knowledge of the characteristics of the automatic weapon, the defendant respectfully suggests that the relevant conduct provisions of the Sentencing Guidelines preclude application of the enhancement to Mr. Pina-Nieves, as it cannot be determined by a preponderance of the evidence standard that the enhancement is based on acts the defendant counseled, commanded, induced, procured, or willfully caused.

In this case, the application of the six-level enhancement dramatically impacts the defendant's guideline sentencing range. Consequently, this Court should determine that due to the disproportionate effect the application of the enhancement has on the defendant's sentence, the more exacting standard of clear and convincing evidence should apply. The defendant suggests that neither standard can be satisfied on the factual record of the case.

**d. The Application of the Enhancement for Automatic Weapon is Based on Acquitted Conduct.**

The United States Sentencing Commission has, as part of the potential 2022-2023 Amendments to the Sentencing Guidelines Manual, proposed Amendment 8 regarding Acquitted Conduct, which would limit the use of acquitted conduct at sentencing. For many years the practice of using acquitted conduct under the relevant conduct provisions of the USSG to increase a defendant's sentence as a result of judicial fact-finding, has been the subject of intense criticism[7]

---

[7] The use of acquitted conduct as relevant conduct at sentencing has been strenuously opposed by a wide variety of prominent advocacy groups such as the NACDL, Americans for Prosperity, Right on Crime, R Street Institute, the

and unrelenting appeals.[8] A wide array of practitioners, legal scholars, judges, and even Supreme Court Justices, have expressed misgivings and questioned the wisdom of the use of acquitted conduct to increase a defendant's sentencing. For example, Judge Kavanaugh of the DC Circuit[9] struggled with this concept and found its implications problematic:

> "Allowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial. If you have a right to have a jury find beyond a reasonable doubt the facts that make you guilty, and if you otherwise would receive, for example, a five-year sentence, why don't you have a right to have a jury find beyond a reasonable doubt the facts that increase that five-year sentence to, say, a 20-year sentence? *Cf. In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)." *United States v. Bell*, 808 F.3d 926, 928 (D.C. Cir. 2015)

Judge Kavanaugh recognized that the current state of the law deposits great sentencing discretion on federal district court judges, including the discretion to "disclaim reliance" on acquitted or uncharged conduct. Judge Kavanaugh wisely reflected that in certain cases this was a desirable result:

> "To be sure, when calculating the advisory Guidelines range, district judges may have to factor in relevant conduct, including acquitted or uncharged conduct. But those Guidelines are only advisory, as the Supreme Court has emphasized. So district judges may then vary the sentence downward to avoid basing any part of the ultimate sentence on acquitted or uncharged conduct."[10]

---

CATO Institute, FAMM, Niskanen Center, and the Sentencing Project. *See* Written Statement of Michael P. Heiskell, President-Elect, NACDL, Re: Proposed Amendments to the Federal Sentencing Guidelines Relating to Acquitted Conduct, February 24, 2023 at 7.

[8] A challenge to the use of acquitted conduct at sentencing is currently pending before the Supreme Court on a petition for writ of *certiorari* in the case of *McClinton v. United States*, No. 21-1557 (2023) (pending).

[9] Judge Brett M. Kavanaugh sat on the DC Circuit from 2006 through 2018. He was confirmed as an Associate Justice to fill the seat vacated by Justice Anthony Kennedy.

[10] Judge Kavanaugh's comments were related to the concurring opinion of Judge Millett in the same case, where she recognized, *inter alia,* that "allowing a judge to dramatically increase a defendant's sentence based on [acquitted conduct] is at war with the fundamental purpose of the Sixth Amendment…"

As previously noted, when applied to this case, the acquitted conduct enhancement related to the possession of the machine gun provides an offense level of 20, which doubles the sentencing guideline for Mr. Pina-Nieves from a range of 15-21 months at a level 14, to 33-41 months, at a level 20. The Supreme Court has indicated that facts that operate to increase the range of penalties to which a defendant is exposed are essential elements of a crime which must be proven at trial beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The use of acquitted conduct to increase a defendant's sentence is inconsistent with the spirit of the Supreme Court holding. In a sense, overriding a jury verdict (or in this case an appellate reversal) by sentencing a defendant as if that conduct had been proven, is contrary to a defendant's Sixth Amendment rights. The consequence of a no *mens rea* or strict liability enhancement that doubles the sentencing guideline for Mr. Pina-Nieves has the undesired effect of treating a defendant who in reality knowingly possessed an automatic weapon the very same way as one who had constructive possession of a weapon without any knowledge of its characteristics. This is the antithesis of a sentence based on either the offense conduct or the characteristics of a defendant, as required by Section 3553.

The First Circuit has recognized that the use of uncharged crimes could "violate a defendant's Sixth Amendment and due process rights if the additional increases are responsible for such a disproportionate share of the sentence that they become the 'tail which wags the dog of the substantive offense.'" *United States v. Gonzalez,* 857 F.3d 46, 60 (1st Cir. 2017), *quoting United States v. Lombard,* 72 F.3d 170 (1st Cir. 1995)(internal citations omitted) (Where defendant was sentenced on a firearm offense with no statutory maximum with a cross-reference to murder,

___

and guideline sentence increased from 327 months of incarceration to life. *Lombard* was decided a decade prior to *United States v. Booker*, 543 U.S. 220, 245, 124 S.Ct. 738 (2005), and the District Court operated under the mistaken impression that it the lacked authority to impose a lesser sentence than called for by the Sentencing Guidelines. *Id.*

In this case, the effect of the use of the acquitted conduct duplicates the potential sentencing range for Mr. Pina-Nieves, based on a strict liability imposition of the sentencing enhancement for the automatic weapon, despite the utter absence of evidence that the defendant was aware of that the Glock had been modified to fire automatically.

Consequently, we pose an additional objection to the amended PSR based on the proposed new guideline prohibiting acquitted conduct as the basis for a 1B1.3 enhanced sentence.

e. **There is a Basis in Law and Fact for the District Court to Exercise its Sentencing Discretion and Grant a Downward Variance.**

Under our current Federal sentencing regime, District Court judges enjoy broad discretion to assess sentencing factors and craft fair sentences based on their individualized evaluations. With this enormous power comes great responsibility. Congress has provided some directives to sentencing courts regarding the factors to consider when imposing a reasonable sentence, which include the nature and circumstances of the offense and the characteristics of the defendant. 18, *United States Code*, Section 3553(a). This statute requires Court to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." This so-called "parsimony provision" is not merely one of many factors to weigh at sentencing, but also places a cap above which the Court is *prohibited* from sentencing-even when a greater sentence is recommended by the sentencing guidelines. *See United States v. Denardi,* 892 F.2d

269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part). These principles are equally applicable to resentencing hearings.

One of the factors that should be considered at a resentencing hearing is evidence of the defendant's post-sentencing rehabilitation. *See United States v. Leahy*, 688 F.3d 18 (1st Cir. 2012)(post-sentencing rehabilitation may support downward variance); *see also Pepper v. United States*, 562 U.S. 476 (2011), 131 S.Ct. 1229 (2011)(Reversing the Eighth Circuit's holding that the defendant's post sentencing rehabilitation could not be considered as a factor supporting a downward variance and directing that the case be assigned to a different judge). Indeed, The Supreme Court has recognized that post sentencing rehabilitation is "highly relevant to several of the §3553 factors". *Id.* at 1242.

In this case, while the PSR provides information regarding the work and educational activities of Mr. Pina-Nieves during the 9 months in which he has been incarcerated in the Institutional Adjustment section, the PSR fails to identify post sentencing rehabilitation as a potential factor to be considered as the basis for a potential downward variance. (*See* PSR, ¶ 20). During his 9 months of incarceration Mr. Pina-Nieves has scrupulously complied with all of the rules and regulations of the Butner Low facility where he is housed. In addition, he has used his time in prison effectively, and has had much time to reflect on his circumstances. He has been deeply impacted by his isolation from his family, and is focused on successfully completing his sentence and reuniting with his children and his sentimental partner.

While incarcerated, Mr. Pina-Nieves has completed the following academic courses: Spanish I, Life Skills Math Interest, Creative Writing, Money Smart Older Adults, ServSave Food Hand Certification. He also enrolled in the Non-Residential DAP Group Course. His completion

___

of the course was interrupted due to a pending transfer to a BOP camp facility. Mr. Pina-Nieves also worked in UNICOR towards the 500-hour program. As of the date of this submission, he has completed approximately 250 hours of the program.[11]

In the defendant's allocution during his resentencing hearing the Court will be able to recognize that Mr. Pina-Nieves is a transformed man after his 9-months of incarceration, and those observations can also be considered when determining a fair sentence for the defendant.

In addition to post sentencing rehabilitation, among the many factors this Court can properly consider in assessing the justification for a downward variance is Mr. Pina-Nieves' acquittal on Count Two of the Indictment, and the impact of the First Circuit conclusion that the evidence did not establish that he had knowledge of the characteristics of the automatic weapon. *See United States v. Khatallah, supra*, 41 F.4th 608. In that case, the DC Circuit, while disagreeing with the District Court's downward variance analysis, unequivocally acknowledged that "the district court's discretion to vary downward to discount acquitted conduct in **undisputed in this case**…" *Id. at* 641 [emphasis ours]. Judge Millett in her concurring opinion also validated the use of the court's discretionary powers, with the government's concession, to consider acquitted conduct as a basis for a downward variance: "[W]e have long left open the possibility that district courts may 'discount acquitted conduct in particular cases-that is, to vary downward from the advisory Guidelines range when the district court judges do not find the use of acquitted conduct appropriate." *Id.* at 651, quoting from *United States v. Settles*, 530 F.3d 920, 924 (D.C. Cir. 2008).

___

[11] Some, but not all, of Mr. Pina-Nieves' educational achievements in custody were noted in the PSR. *See* PSR at at ¶ 20 p. 7.

___

In this case, the consideration of the automatic weapon (acquitted conduct) should be discounted by the Honorable Court in order to appropriately reflect the seriousness and circumstances of the offense. The Court has the inherent power to exercise its sentencing discretion to do so.

## Conclusion

For the reasons discussed herein, the defendant, Rafael Pina-Nieves respectfully requests that the Honorable Court take notice of his objections to the PSR and that determine that the BOL level applicable to the offense is a 14, not a 20.

**RESPECTFULLY SUBMITTED** on this 10th day of April 2023, in San Juan, Puerto Rico.

**WE HEREBY CERTIFY**: That today we have electronically filed the foregoing document with the Clerk of the Court for the District of Puerto Rico, using the CM/ECF system which will send a copy and notification of filing to all counsel of record.

**DMR LAW LLC**
Capital Center Building
South Tower, Suite 1101
San Juan, Puerto Rico 00918
Tel. 787-331-9970

By: *s/ Maria A. Dominguez*
Maria A. Dominguez
USDC-PR No. 210908
maria.dominguez@dmralaw.com

*s/ Javier Micheo Marcial*
Javier Micheo Marcial
USDC-PR No. 305310
javier.micheo@dmralaw.com